ESTATE OF RICHARD O'BRIEN, MARY A. O'BRIEN, COEXECUTRIX, HELEN O'BRIEN, COEXECUTRIX, RICHARD O'BRIEN, COEXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61620.   Promulgated September 14, 1934.

*Alvin M. Powell, C.P.A.*, for the petitioner.
*Richard W. Wilson, Esq.*, for the respondent.

OPINION.

BLACK: Respondent has determined a deficiency in income tax against petitioner for the year 1929 of $6,682.37. In the statement attached to the deficiency notice respondent states the reasons upon which he computed the deficiency as follows:

The issue involved at the conference is whether corpus gains are taxable to the trust estate or to the beneficiaries who are also the remaindermen.

Careful consideration has been given to all information submitted with the result that this office cannot allow your contentions.

You are advised that article 861, Regulations 74, provides in part as follows: " In general, the income of a trust for the taxable year which is to be distributed to the beneficiaries must be returned by and will be taxed to the respective beneficiaries, but the income of a trust which is to be accumulated or held for future distribution, whether consisting of ordinary income or gain from the sale of assets included in the corpus of the trust, must be returned by and will be taxed to the trustee."

In the instant case the question to be decided with respect to distribution of income is whether the term " income " includes profits from the sale of corpus of the estate. Ordinarily such profits are considered as part of corpus and are not available for periodic distribution. However, in some cases litigated in state courts it is realized that enhancement of values of securities included in corpus has been distinguished as in the several cases cited by your representative in conference with respect to Pennsylvania laws. Under the conflict of laws, the Federal law, however, would govern.

Petitioner assails the correctness of the foregoing determination on the ground that it results in taxing to the petitioner profit from the sale of corpus of the estate. Petitioner states in the amended petition as follows:

(a) Petitioner contends such profits from sale of corpus is properly taxable to the heirs to whom the entire estate was distributed in January, 1930.

At a hearing before the Bureau in Washington the taxing of profit $23,415.00 from sale of rights to the heirs was conceded, but the deficiency notice and accompanying statement do not disclose the appropriate adjustment.

(6) WHEREFORE, the petitioner prays that this Board may hear the proceeding and determine that the deficiency due from the petitioner for the year 1929 should not be in excess of $3,600.00.

Facts were stipulated as follows:

Richard O'Brien died testate January 9, 1923. His will provides for disposition of his estate as follows: (a) certain specific bequests; (b) creation of an $18,000.00 trust for the benefit of a certain individual; and (c) creation of a trust estate from the residue to terminate January 1, 1930, " at which time my said executors * * * shall divide the principal or corpus of any residuary estate * * * equally among my grandchildren, their mother, Mrs. Mary Agnes O'Brien * * * share and share alike * * *." These same residuary legatees were to receive " the income, interest or dividends " for the duration of the trust.

In 1929 the executors sold a large portion of the securities owned by the estate realizing thereon a profit of $60,811.86, which was shown in the 1041

return, together with other income, as distributable to the seven beneficiaries who included their respective shares in their returns.

The proceeds from the sale of securities were immediately reinvested in other securities in quantities evenly divisible by the number of beneficiaries (7) in order that the assets be made more easily distributable at January 1, 1930. Title was taken in the name of the executors, who were also the trustees and the securities were retained by them until after January 1, 1930.

The Commissioner takes the position that the profit on corpus was taxable to the trust estate and that taxes paid thereon by the beneficiaries should be refunded.

In addition to the foregoing stipulation, respondent introduced in evidence the return of the fiduciary on Form 1041 for the year 1929. The first item appearing under schedule C of the return is " 316 rights First National Bank, date bought 1923–1925, sold 1929; cost $3,387.93; selling price $23,415."

The only evidence which petitioner introduced in addition to the stipulation was the will of decedent, Richard O'Brien, setting up the trust involved here. The following portion of his will is pertinent to the issue which we now have before us to decide.

Second. To keep the remainder of my residuary estate invested on good security either in the securities which may come into their hands from my estate at my death or by a disposal of the same or a part thereof, without prejudice to my estate and without sacrifice as to values and a reinvestment thereof on good security with power to vary and transpose the said investment, or investments, thereof, from time to time, for other good and substantial investments preferably of the best bonds of the American Telephone and Telegraph Company, listed on the New York Stock Exchange, or stock of the Peoples-Savings and Dime Bank of Scranton, Pennsylvania, or the First National Bank of Scranton, Pennsylvania, and *to pay over the income, interest or dividends arising from such investment or investments in equal semi-annual installments* (having first deducted therefrom legal commissions and other costs and charges by way of taxes or otherwise) unto my daughter-in-law Mrs. Mary Agnes O'Brien, wife of my said son Richard Marks O'Brien, as long as she remains the wife or the unmarried widow of my said son Richard Marks O'Brien, to be applied and expended by her for the reasonable support of herself and the support and education of my grandchildren until January 1st, 1930, at which time my said executors, or the survivors or survivor of them, shall divide the principal or corpus of my residuary estate * * *. [Emphasis supplied.]

The petitioner contends that the profits resulting from the foregoing transaction in stock rights were taxable to the beneficiaries of the trust and not to the trust itself. Petitioner concedes that the profits resulting from the sale of the stock itself were taxable to the fiduciary and that respondent is correct on that point.

Thus it will be seen from the foregoing recital of facts that the only issue we have here to decide is whether the profits on the sale of certain stock rights by the trust estate were currently distributable income to the beneficiaries of the estate or whether such

profits were to be added to the corpus of the trust estate to be turned over to the remaindermen on the final distribution of the estate. If the profits from the sale of these stock rights were a part of the " income, interest or dividends " from the trust corpus, then they were, under the terms of the will, currently distributable to the beneficiaries and would be taxable to them whether actually distributed or not. If, however, such profits were not " income, interest or dividends " from the trust corpus within the meaning of the law, then they were not currently distributable to the beneficiaries, but became a part of the trust corpus to be distributed later to the remaindermen and were taxable to the fiduciary.

In support of its contention petitioner cites *In Re Waterhouse's Estate*, 162 Atl. 295. We have examined that case and we do not think it supports petitioner's contention when applied to the facts which are in evidence. In the *Waterhouse* case the Supreme Court of Pennsylvania holds that the presumption is that the proceeds from the sale of stock belong to the corpus of a trust and that likewise the same presumption holds as to the sale of stock rights because stock rights are a species of stock. On this point the Supreme Court of Pennsylvania said in the *Waterhouse* opinion:

The presumption is that the proceeds from the sale of stock belong to the corpus of the trust, and the burden of proving that they do not rests on the person asserting a claim to them.[17]

(d) *Proceeds arising from the sale of stock rights should be distributed in the same manner and have the same presumptions following as in the sale of stock. They are a species of stock.* This is the main question here involved. ▓▓ ▓▓ We have held[18] that proceeds from the sale of stock rights " * * * must be apportioned in the same manner as an extraordinary stock dividend would be; that is, there should be allotted to the corpus of the trust sufficent thereof to maintain unimpaired the intact value of the stock held by it, and the life tenant should receive the balance, because it represents corporate earnings which accumulated after he became entitled to all dividends. * * * " But in the case cited[19] we considered the sale of stock rights in reference to intact value and accumulated earnings only, but decided nothing as to stock rights sold at a profit due to the stock's earning power, good will, or its intrinsic or speculative value in the market. The benefits resulting from the sale of stock rights under the latter circumstances should be apportioned in the same manner as in the sale of stock. In all cases, in determining the share which the life tenant is to receive based on apportionment, his share is limited to such an amount as is attributable to income or can be fairly included therein.[20] It does not include increases of capital assets not due to earnings, and, in the sale of stock rights, earnings do not include such items as speculative value, enhanced market value, or the stock's earning power. .

▓▓ *When the trustees sell stock rights, the presumption is that the proceeds derived therefrom represent capital assets of the estate, and the burden*

*of showing the contrary rests on those who assert a claim to the fund or part of it.* [Emphasis supplied.]

Petitioner has offered no evidence which would enable us to make any apportionment of the profits resulting from the sale of the stock rights between the beneficiaries of the income and the remaindermen in accordance with the rule announced in the *Waterhouse* case even conceding that we have authority to make such an apportionment, the trustees apparently having made none. In the absence of such evidence, the profits from the sale of stock rights must be treated the same way as the profits resulting from the sale of the stock out of which the stock rights grew. Petitioner concedes that the profits from the sale of the stock itself are taxable to the fiduciary and not to the beneficiaries. If the profits from the sale of the stock rights are to be treated differently, the burden of proving why that should be so rests upon the petitioner, and this burden of proof, as we have already endeavored to point out, petitioner has not met. It is not contended by petitioner that any of the profits resulting from the sale of the stock rights were actually distributed to the beneficiaries during the taxable year, and it must be borne in mind that a trust in rendering its income for taxation can only deduct income which has been actually distributed or properly credited to the beneficiaries, or such income as is mandatorily distributable currently by the fiduciary to the beneficiaries. (See sec. 162, Revenue Act of 1928.) It will of course be admitted that under the terms of decedent's will in the instant case all " income, interest and dividends " received in any particular taxable year were mandatorily distributable to the beneficiaries in that taxable year and were therefore taxable to the beneficiaries and not to the fiduciary, but, for reasons already stated, that does not apply as to the profits resulting from the sale of stock rights because these profits were not " income, interest and dividends " from the property.

Our holding in this respect is in harmony with our decision in *Anna M. Chambers et al.*, 29 B.T.A. 971, in which we discussed *In re Waterhouse's Estate, supra.* It is true that in the *Chambers* case we had before us only the question of the treatment of the profits resulting from the sale of stock, whereas here we have the question of the treatment of the profits from the sale of stock rights, but, as already pointed out, the treatment is the same except under certain exceptional circumstances which, so far as the evidence shows, do not exist in the instant case.

*Decision will be entered for the respondent.*